1998 SD 23

**Kay ZOSS, as Special Administratrix of the Estate of Robert Rowland Zoss, Plaintiff and Appellee,**

v.

**DAKOTA TRUCK UNDERWRITERS, Defendant and Appellant.**

No. 20019.

Supreme Court of South Dakota.

Argued Jan. 13, 1998.

Decided March 4, 1998.

---

Rick Johnson of Johnson, Eklund, Nicholson Peterson & Fox, Gregory, for plaintiff and appellee.

Paul T. Barnett of Siegel, Barnett & Schutz, Sioux Falls, for defendant and appellant.

SABERS, Justice

[¶ 1.] Trial court granted summary judgment to employee's widow, ruling (1) workers' compensation insurer's statutory lien against third-party recovery in wrongful death action was limited to benefits paid as of the date the court entered an order apportioning the proceeds of the settlement. The court also ruled (2) it would apportion expenses and attorney's fees later. Insurer appeals. We reverse and remand.

## FACTS

[¶ 2.] On July 13, 1995, Robert Zoss (Robert) was killed in a semi-truck accident. At the time of the accident, Robert was acting within the scope of his employment with Selland Livestock. His widow, Kay Zoss (Zoss) received workers' compensation benefits from Selland's workers' compensation insurer, Dakota Truck Underwriters (Insurer). As of January 27, 1997, Insurer paid $3,090 for burial expenses and $21,078 in death benefits. It continues to pay Zoss death benefits of approximately $1,113 per month. Those benefits will cease upon Zoss' death; her remarriage would trigger a lump-sum payment of two years' benefits. SDCL 62–4–12.

[¶ 3.] Zoss brought a wrongful death action against another driver involved in the accident, eventually settling for $215,000. She then brought a declaratory judgment action to determine the parties' interest in the settlement. The trial court granted summary judgment to Zoss, limiting Insurer's statutory lien to amounts paid as of the time the trial court apportions the wrongful death damages among the beneficiaries under SDCL 21–5–8. The court also ruled it would apportion expenses and attorney's fees at that time.

## STANDARD OF REVIEW

[¶ 4.] The construction of the workers' compensation statutes and their application to these facts present questions of law, which we review de novo. *Kern v. City of Sioux Falls,* 1997 SD 19, ¶ 4, 560 N.W.2d 236, 237 (citing *Johnson v. Rapid City Softball Ass'n,* 514 N.W.2d 693, 695 (S.D.1994)). The facts in this case are undisputed; therefore, we will affirm summary judgment if the trial court correctly applied the law. *Weiss v. Van Norman,* 1997 SD 40, ¶ 9, 562 N.W.2d 113, 115 (citations omitted).

## [¶ 5.] 1. WHETHER INSURER'S STATUTORY LIEN ATTACHES TO THE ENTIRE SETTLEMENT.

[¶ 6.] There are two statutes at issue. SDCL 62–4–38, discussed later, and SDCL 62–4–39, which provides:

> If compensation has been awarded and paid under this title and the employee has recovered damages from another person, the employer having paid the compensation may recover from the employee an amount equal to the amount of compensation paid by the employer to the employee, less the necessary and reasonable expense of collecting the same, which expenses may include an attorney's fee not in excess of thirty-five percent of compensation paid, subject to § 62–7–36.

The parties do not dispute that SDCL 62–4–39 creates a statutory lien to reimburse an employer or insurer for workers' compensation benefits already paid, less Insurer's share of the expenses and attorney's fee for collecting from the third party tortfeasor. *See Liberty Mut. Ins. Co. v. Garry,* 1998 SD 22, ¶ 8, 574 N.W.2d 895, 897; *Schipke v. Grad,* 1997 SD 38, ¶ 14, 562 N.W.2d 109, 113; *National Farmers Union Property & Cas. Co. v. Bang,* 516 N.W.2d 313, 321 (S.D.1994).

### *Future Benefits*

[¶ 7.] This dispute centers on SDCL 62–4–38 and its effect on benefits owed but not yet paid:

> If an injury for which compensation is payable under this title has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at the employee's option, either claim compensation or proceed at law against such other person to recover damages or proceed against both the employer and such other person. However, in the event the injured employee recovers any like damages from such other person, the recovered damages shall

be an offset against any workers' compensation which the employee would otherwise have been entitled to receive.

Zoss argues that the reference to "like" damages disallows "*any* offset whatsoever where 'like damages' have not been recovered." (Emphasis in original). She asserts the $215,000 includes payment for claims not covered by workers' compensation, which, she contends, is limited to employees' earnings based on life expectancy. Therefore, according to Zoss, because the settlement is not broken down by category of damages, it is impossible to ascertain which damages are "like," thus rendering SDCL 62–4–38 inapplicable.

[¶ 8.] Insurer argues that determining its rights in the $215,000 by looking at the date the settlement proceeds are distributed is illogical and inconsistent. We agree. It is inconsistent to state that as to past benefits paid, Insurer is entitled to dollar-for-dollar reimbursement, but that future benefits are credited only to the extent they constitute "like" damages. Such a holding would encourage employees to rush to settlement with the third-party tortfeasor in order to reduce the insurer's lien.

 [¶ 9.] Zoss places undue emphasis on the Legislature's insertion of the word "like" in the 1994 amendment to SDCL 62–4–38. We interpret statutes in accordance with legislative intent.

Intent must be determined from the statute as a whole, as well as enactments relating to the same subject. Where statutes appear to conflict, it is our responsibility to give reasonable construction to both, and if possible, to give effect to all provisions under consideration, construing them together to make them harmonious and workable.

*In re Certif. of a Question of Law (Wiersma v. Maple Leaf Farms)*, 1996 SD 16, ¶ 4, 543 N.W.2d 787, 789 (citations & internal quotations omitted).

[¶ 10.] SDCL 62–4–38 through –40 each address a different aspect of reimbursement. SDCL 62–4–38 deals with reimbursement of benefits owed but not yet paid when the employee brings the lawsuit against the third party. SDCL 62–4–39 also applies when the employee initiates the lawsuit and concerns reimbursement for benefits already paid. SDCL 62–4–40 allows the employer to sue the third party for compensation paid *or* payable:

If compensation is awarded under this title, the employer having paid the compensation, or *having become liable therefor*[1] may collect in his own name or that of the injured employee, or his personal representative, if deceased, from any other person against whom legal liability for damage exists, the amount of such liability and shall hold for the benefit of the injured employee or his personal representative, if deceased, the amount of damages collected in excess of the amount of compensation paid such employee or his representative, less the proportionate necessary and reasonable expense of collecting the same, which expenses may include an attorney's fee not in excess of thirty-five per cent of damages so collected, and shall be subject finally to the approval of the department.

(Emphasis added). Neither SDCL 62–4–39 nor –40 provide that benefits already paid are treated differently than benefits payable and we do not accept Zoss' argument that the insertion of "like" in SDCL 62–4–38 implicates a different result under that statute.[2] It would make no sense to limit the lien on future benefits when the employee sues the third party, but reimburse dollar-for-dollar when the employer brings the suit.

1. Similar language is universally interpreted to mean future benefits. *See* 6 *Larsons's Workers' Compensation Law* § 74.31(e), at 14–471 (1997):

If the statute does not take pains to deal explicitly with the problem of future benefits, but merely credits the carrier for compensation paid, or compensation for which the carrier is liable, the correct holding is still that the excess of third-party recovery over past compensation actually paid stands as a credit against future liability of the carrier.
(Collecting cases).

2. In fact, SDCL 62–4–38 through –40 stem from a single legislative enactment. They were originally adopted in Chapter 376 § 11 of the 1917 Session Laws, and remained a single provision until separated by the code counsel in the creation of the 1967 South Dakota Compiled Laws.

### Pain and Suffering

[¶ 11.] Also without merit is Zoss' claim that damages representing Robert's pain and suffering should be segregated. *See* 6 *Larsons's Workers' Compensation Law* § 74.33 through .35, at 14–534 to –549 (1997):

> The "compensation" expenditure for which the insurer is entitled to reimbursement includes not only wage benefits but hospital and medical payments as well; this is usually expressly stated, but is the correct result even if the reimbursement provision speaks only of "compensation" paid.
>
> The term "compensation" also includes funeral expenses; but it has been held in New Jersey that, when the legislature named compensation and medical benefits but omitted mention of funeral expenses, the insurer could not be reimbursed for funeral expenses. The theory was that explicit mention of the two kinds of payment implied exclusion of the third. This seems a rather technical consideration, attributing too much weight to what was undoubtedly a mere oversight. *The obvious intention of the legislature in all these statutes is to make the insurer whole, not to repay him certain selected and stipulated parts of his compensation cost.*
>
> . . .
>
> [I]t is quite clear, as the cases now stand, that the prevailing rule in the United States refuses to place an employee's third-party recovery outside the reach of the employer's lien on the ground that some or all of it was accounted for by damages for pain and suffering. . . . Indeed, the same result has been reached even when the employee had taken the trouble to put his pain and suffering claim into a separate suit.

---

3. Insurer argues that "like damages" triggers the right to a lien, but that the measure of the lien is set by "recovered damages." See SDCL 62–4–38, reproduced at ¶ 7. We assume that "like" means "similar"—as opposed to "unlike" or "dissimilar". Our conclusion comports with the majority viewpoint, i.e., that the lien does not attach to damages allocated for loss of consortium. See *Page v. Hibbard*, 119 Ill.2d 41, 115 Ill.Dec. 544, 547, 518 N.E.2d 69, 72 (1987) (collecting cases).

(Emphasis added) (citations & footnotes omitted); *accord Dearing v. Perry*, 499 N.E.2d 268, 270–71 (Ind.Ct.App.1986) (collecting cases).

### Loss of Consortium

[¶ 12.] Zoss next argues that damages for her loss of consortium claim should be segregated, as that claim could not have been brought by either Robert or Insurer and therefore cannot constitute "like" damages. We agree that recovery for loss of consortium is not "like damages" because the action is not .

> brought by the spouse as the personal representative of the employee, but is an independent action to recover for injuries the spouse has suffered, such as loss of support and loss of society. [The lien does not] attach to that portion of the settlement proceeds designated as a settlement of [widow's] claim for loss of consortium.

*Page v. Hibbard*, 119 Ill.2d 41, 115 Ill.Dec. 544, 547, 518 N.E.2d 69, 72 (1987).[3]

[¶ 13.] Zoss cites *Dionne v. Libbey–Owens Ford Co.*, 621 A.2d 414, 417–18 (Me. 1993), for the same proposition but also argues that the burden was on Insurer to ferret out evidence of like damages; however, two years after *Dionne*, the Maine Supreme Court ruled that the burden is on the employee or spouse to either obtain an express allocation in the settlement or a judicial determination of the loss of consortium claim. *See Nichols v. Cantara & Sons*, 659 A.2d 258, 259–61 (Me.1995). We agree that this burden is on the employee or spouse.

[¶ 14.] Under other circumstances, we might rule this issue waived by Zoss' failure to (1) insist on a clear apportionment in the settlement or a ruling by the trial court to preserve this argument,[4] or (2) file a notice of

---

4. The potential for future claimants to inflate the value of their loss of consortium claims when they enter into settlement agreements would be undermined by requiring that the settlement be subject to Insurer's agreement or judicial determination or approval:

> [A claimant] and a third-party cannot negotiate a settlement in which the employer's insurer is not a party whereby a substantial portion of the total amount is allocated to loss of consortium. If we were to allow this, the

review on this issue. *See id.* at 260–61 (insurer entitled to lien on entire recovery when claimant failed to offer any proof regarding allocation of loss of consortium claim). However, since this is an issue of first impression for the court, we will not prevent Zoss from attempting to prove on remand the portion of the settlement which compensates her for loss of consortium.[5]

## [¶ 15.] 2. FORMULA FOR ALLOCATION OF EXPENSES AND ATTORNEY'S FEE OF THIRD–PARTY RECOVERY.

[¶ 16.] In cases where there is a third-party recovery which exceeds compensation paid, with the employee retaining the excess, the expenses and attorney's fee will be assessed on a pro rata basis. *See* SDCL 62–4–39 & –40; *Garry,* 1998 SD 22 at ¶ 9, 574 N.W.2d at 897. Here, Insurer's lien could potentially attach to the entire settlement, assuming Zoss neither dies nor remarries before Insurer's future liability equals or exceeds the net settlement. Under such circumstances, Insurer bears responsibility for all expenses and attorney's fees. *See Larson's, supra* § 74.32(a)(4), at 14–520 to –521:

> Since the employer's right of reimbursement extends not only to past compensation paid but to future liability, most courts have concluded that the employer's share of the fees and costs involved in the em-

ployee's third-party recovery should be calculated on his total potential liability, rather than on past benefits actually paid. .(Collecting cases).

[¶ 17.] Therefore, the formula to be applied on remand is:

(1) Subtract the expenses incurred in obtaining the settlement from the $215,000.

(2) Subtract the attorney's fee, which shall not exceed 35%[6] of the figure reached after subtraction of expenses in (1).

(3) Separate the loss of consortium claim, if any, from the other damages.

(4) Reimburse Insurer, from the amount remaining after subtracting any consortium damages, the amount of compensation previously paid.

(5) Provide Zoss with the remaining net amount.

(6) The remaining net amount will be divided by $1113.30 (Zoss' monthly benefit amount) to determine the number of months of future workers' compensation benefits for which Insurer will continue to have a lien. During this time, Insurer will cease the monthly payments.

(7) After the number of months of payments provided for in (6) have elapsed, Insurer will continue to pay Zoss her monthly benefit amount, not subject to any lien.[7]

---

statutory lien provision would be completely evaded.... Only where the issue is fully and fairly tried before an impartial fact finder or where the insurance carrier is invited to participate in settlement negotiations will such an allocation be given legal effect as to portions subject to the carrier's lien.
*Dearing,* 499 N.E.2d at 272; *Hultin v. Francis Harvey & Sons, Inc.,* 40 Mass.App.Ct. 692, 666 N.E.2d 1323, 1329 (1996) ("[Settlements] wherein the bulk of the settlement proceeds has been allocated to the loss of consortium claims ... must be eyed by the court with a healthy dose of skepticism"); accord Page, 115 Ill.Dec. at 548, 518 N.E.2d at 73 (remanding for determination whether stipulated recovery on consortium claim was fair and reasonable in light of the total settlement).

5. Proof may be difficult at this stage; by Zoss' own admission, "based upon this record, a determination of the existence of 'like damages' in this case is not possible[.]" However, both sides submitted affidavits purporting to establish allocation of damages for loss of consortium, and

included statements, based in part on risk factors, that a viable defense of contributory negligence would have been asserted. When discussing the allocation of costs, the courts generally presume a recovery; however, SDCL 62–4–38 through –40 address neither the apportionment of costs in an unsuccessful suit nor employees' contributory negligence. Therefore, the preferred practice would be, when the risk factors suggest, to reach agreement or bring a declaratory judgment action prior to settlement or suit with the tortfeasor.

6. Since the maximum attorney's fee is set by statute, the lien cannot be compromised by a contingent fee agreement that exceeds this percentage. *Swets v. Tovar,* 284 Ill.App.3d 1003, 220 Ill.Dec. 627, 629, 673 N.E.2d 1048, 1050 (1996).

7. If Zoss dies before Insurer is required to commence making payments again, Insurer may make a claim against her estate for any excess payment of expenses and attorney's fees. If Zoss

*Accord Denius v. Robertson,* 98 Ill.App.3d 83, 53 Ill.Dec. 701, 704–05, 424 N.E.2d 336, 339–40 (1981); *see also Freer v. Hysan Corp.,* 108 Ill.2d 421, 92 Ill.Dec. 221, 225, 484 N.E.2d 1076, 1080 (1985) ("[T]he suspension of payments is the most expedient and accurate method for protecting the employer's rights.").

[¶ 18.] The order granting summary judgment to Zoss is reversed and remanded consistent with this opinion.

[¶ 19.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

remarries before that time, Insurer will have a similar claim, subject to SDCL 62–4–12, which provides that a surviving spouse receives a two-year lump sum upon remarriage. The parties are, of course, free to reach a settlement at any time.